| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Mandalsa Singh, <br><br> Plaintiff, <br><br> v. <br><br> Minnesota Masonic Charities d/b/a Minnesota Masonic Home, <br><br> Defendant. | Case Type: Employment <br><br> **SUMMONS** |

**THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANTS:**

1. YOU ARE BEING SUED. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this Summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the persons who signed this Summons located at: <u>see addresses below</u>.

3. YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiffs Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for In the Complaint, you must say so in your Answer.

4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint If you do not want to contest the claims stated In the Complaint, you do not need to respond. A Default Judgment can then be entered against you for the relief requested in the Complaint.

1

5.      LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even If you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.      ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: May 20, 2019

SATRE LAW FIRM

*/s/ Eric D. Satre*

Eric D. Satre, MN Bar No. 183015
Attorney for Plaintiffs
US BANK CENTER
101 East Fifth Street, Suite 2600
Saint Paul, MN 55101
Telephone: (651) 212-4919
Facsimile: (651) 212-4203
esatre@satrelaw.com
admin@satrelaw.com

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Mandalsa Singh,<br><br>  Plaintiff,<br><br>v.<br><br>Minnesota Masonic Charities d/b/a Minnesota Masonic Home,<br><br>  Defendant. | Case Type: Employment<br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff, Mandalsa Singh for her cause of action against Defendant Minnesota Masonic Charities d/b/a Minnesota Masonic Home states and alleges:

## GENERAL ALLEGATIONS

1. Plaintiff Mandalsa Singh, (hereinafter "Plaintiff") is an adult female resident of Minnesota.

2. Defendant Minnesota Masonic Charities, (hereinafter Defendant) is a Minnesota Corporation whose primary business address is listed in the Minnesota Secretary of State website as 11501 Masonic Home Drive, Bloomington, MN 55437-3699. Eric J. Neetenbeek is listed as their president.

3. Defendant offers care to a wide variety of care to older adults from assisted living to outpatient services.

4. Plaintiff worked for Minnesota Masonic Home from December 20, 2004, through October 25, 2018.

5. On the morning of October 18, 2018, Plaintiff, notified her employer that she needed a significant surgical procedure for the workplace shoulder injury that she suffered working for defendants. She reported to the company Human Resources department, staffing office, that she would be out for an extended period and requested leave for the post-operative period.

6. As of that date Plaintiff had over 35 years of experience in the healthcare field. She worked nearly 14 years for Defendant.

7. Before she requested time for surgery for her workplace injury, Plaintiff had no history of allegedly making unkind statements to a resident, either in the 14 years

1

she worked for defendant or in the prior 21 years she worked in healthcare prior to working for Defendant.

8. Plaintiff worked for Defendant, full-time, as a registered nursing assistant and trained medication aide. Plaintiff's final base rate of pay was $18.88 per hour.

9. Before she requested leave for the surgery on October 18, 2018, Singh cared for a resident with mobility issues (hereinafter "Resident A"). Her care plan called for assisted lifts when she was too fatigued to get up without the help of mechanical assisted lift. The assisted lift was the safe manner of helping Resident A.

10. At approximately 6:00 pm on October 17. 2018 Plaintiff attempted to help Resident A to stand so she could go to the bathroom. Resident A made three unsuccessful attempts to stand. Plaintiff then asked a co-worker to assist with the procedure but the co-worker said she was too busy. Resident A's care plan said that if she was fatigued, she should use the EZ stand. Because she was clearly too fatigued, Plaintiff used the EZ stand as indicated on the care plan.

11. The resident did not protest standing with the mechanical lift. In addition, the lift was successful, and it followed the patient's care plan.

12. Later that night, at around 9:00 pm Resident A asked for assistance with putting on her night gown. Plaintiff, could not help right away because she heard an emergency bathroom notice for Resident B, who was at rick for a fall. She told Resident A that she would be right back to help with the night gown. At that time Resident A was safely sitting on her wheelchair.

13. As soon as Plaintiff was done making sure Resident B completed his bathroom procedure without falling she returned to Resident A. At that time, Resident A shared that she was very sad, because her best friend was in the hospital and she was not going to be able to visit for an extended period.

14. Plaintiff comforted Resident A and tried to help her through the loneliness. Also, Plaintiff helped her get into her nightgown. No cross words were spoken at that time.

15. The Duty Nurse that evening came into the room to give Resident A her medications and observed Resident A being transferred from her wheelchair to her bed using the EZ Stand. Plaintiff then made sure the resident was tucked in before she left the room.

16. Previously, another aid had incorrectly lifted that patient. As a result, the patient fell and was injured. However, Plaintiff's lift on the morning in question was very safe, caused no injury, and was proper protocol according to the client's care plan.

2

17. Throughout the evening and morning Plaintiff monitored Resident A and made sure to change her briefs and reposition her when appropriate. Plaintiff had no cross words for Resident A, who was on long term care and medicated for behavior issues.

18. Plaintiff left work that morning knowing it had been an uneventful. At the time she left, even though the next shift had been on her wing for at least half an hour, and the night nurse had conducted her rounds. Throughout that entire time here were no "complaints" about Plaintiff.

19. Within approximately 4 hours after she obtained the FMLA leave paperwork [for additional time off to get a surgery for her workers compensation injury] Defendant rudely called and woke Plaintiff even though she had just completed a 16-hour double shift and was scheduled to work another 16-hour shift at 3:00 pm.

20. Defendant told her that she must report to the office prior to starting her next shift.

21. Plaintiff reported to work. At that time, Defendant's Managers asked her where she was during the last half an hour of her shift. She informed them that she was at the staffing office obtaining the FMLA paperwork since, after 7:00 am another staff person was on the floor. Then they proceeded to make untrue allegations against Plaintiff.

22. After she had requested the FMLA paperwork, Plaintiff returned to the floor she worked the two shifts at and were no false allegations being made against her.

23. Even though she was not accused of patient mistreatment at any time prior to making the leave request, and she successfully completed all of her medical cares on the two shifts she just completed, Plaintiff was discharged based on a false allegation that she made *statement to a resident that constated abuse*. Not only was that statement untrue but Defendant could have easily determined it was false.

24. Plaintiff did not make negative comments about the resident in question; instead she only left her momentarily during her shift because another resident was in danger of falling. Defendant's records would have confirmed her predicament.

25. The only reason the resident, with the behavior issues, claimed to be upset during Plaintiff's shift, was because of the fact that her best friend was hospitalized and would not be visiting in the foreseeable future.

26. The only dispute between Plaintiff and the resident that evening occurred when the resident asked why she couldn't change the nightgown immediately. Plaintiff politely addressed that issue explaining the possible fall situation, and when Plaintiff returned Resident A was clearly not upset with Plaintiff. The Nurse that evening

would have observed that the Resident was not upset when she came with the medications.

27.     The only time anyone claimed that the resident was allegedly upset with Plaintiff was the next day, after Plaintiff made her leave request.

28.     Defendants knew that Plaintiff required hand surgery due to a workplace related injury that would keep her off from work for at least a month. Within hours of that request they suspended her. Then they terminated her employment before allowing her an opportunity to return to work. The termination was based on a false and pretextual reason pretext thereby obstructing her workers' compensation rights and retaliating against her for having filed a claim.

29.     As a result, even though another employee caused the resident to injure herself by not properly lifting her, Plaintiff who successfully lifted the patient was fired, falsely in part for not following the care plan. Defendants knew that the allegation was false at the time they asserted it against Plaintiff since that had trusted her for years with vulnerable adults and she never betrayed that trust.

## COUNT I
## WORKERS' COMPENSATION OBSTRUCTION
### Violation of Minnesota Statutes §176.82, subd. 1 and 2

Plaintiff realleges and incorporates herein by reference the allegations in the proceeding paragraphs.

30.     When Plaintiff suffered a workplace injury Defendant denied coverage after Plaintiff reported the workplace injury.

31.     Plaintiff has had to use her personal health insurance for the treatment related to her workplace injury.

32.     Plaintiff did not receive payment for lost wages due to her injury, the surgery and her rehabilitation.

33.     Instead, when she reported that she would need a surgery, and time off to convalesce from that injury, Plaintiff's workers compensation claim was intentionally obstructed by the practices mentioned above and she was retaliated against due to those practices.

34.     As a direct and proximate result of the acts alleged above, Plaintiff has suffered and continues to suffer damages including, but not limited to economic and emotional distress as well as being forced to leave her employment.

## COUNT II
### (Violation of the Family Medical Leave Act)

Plaintiff realleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

35. The reasons given to Plaintiff for her termination were a pretext to cover for the true reason which was to deprive Plaintiff of her rights under the Family and Medical Leave Act, 29 U.S.C. §2602, *et seq.*.

36. As a result of Plaintiff's wrongful termination, she has suffered past and future lost wages and benefits.

**WHEREFORE,** Plaintiff requests that:

1. She be awarded her lost wages and benefits together with costs, disbursements, reasonable attorney's fees and pre and post judgement interest.

2. She be awarded liquidated damages pursuant to 29 U.S.C. §2619; and

3. She be awarded all other relief under the Family and Medical Leave Act and all other relief that the Court deems just and proper.

4. She be awarded Compensatory and special damages to be paid by Defendants Advanced to Plaintiff in an amount more than Fifty Thousand and No/100 ($50,000.00) dollars.

5. She be awarded Reasonable attorney's fees on all applicable counts;

6. She be awarded the damages incurred as a result of the workers compensation obstruction and retaliation including any diminution in workers' compensation benefits caused by a violation of MN Stats. §176.82 including costs and reasonable attorney fees, and for punitive damages not to exceed three times the amount of any compensation benefit to Plaintiff is entitled;

7. She be awarded costs and disbursements, and pre and post-judgment interest; and

8. For such other relief as this Court deems just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated: May 20, 2019

SATRE LAW FIRM

_____
Eric D. Satre, MN Bar No. 183015
Attorney for Plaintiffs
US BANK CENTER
101 East Fifth Street, Suite 2600
Saint Paul, MN 55101
Telephone: (651) 212-4919
Facsimile: (651) 212-4203
esatre@satrelaw.com
admin@satrelaw.com

**MINN. STAT. §549.211 ACKNOWLEDGMENT**

The undersigned acknowledges that: I am familiar with the terms of Minn. Stat. §549.211, and that costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party pursuant to subdivision 2 thereof, in the event a party or an attorney acts in bad faith; asserts a claim or defense that is frivolous and that is costly to another party; asserts an unfounded position solely to delay the order and course of the proceedings or to harass; or commits a fraud upon the Court.

Dated: May 20, 2019

_____
Eric D. Satre (#183015)